HENRY HARRISON and others, Committee &c. of George Harrison, *vs.* MARTHA PECK.

The sections of the statute relating to the admeasurement of dower indicate a clear intention of the legislature that, as between the widow and the heir or devisee, the widow's right of dower shall be enforced unburthened, if possible, except from the time an assignment of the dower shall have been made.

The direction to the executor to proceed with diligence to pay the debts of the deceased, and in the order expressed, contained in the Revised Statutes, is, in legal effect, an appropriation of the personal estate for that purpose, and it must be employed therefor. And this result having been attained, the legatee has no right against the widow's dower, founded upon such appropriation.

Where, by a deed executed between a sole devisee and the doweress, certain lands were set apart to the latter for her dower, and the balance were released by her; and after a recital that the lands of which the deceased died seised were subject to certain unpaid taxes, assessments, &c., each party covenanted to pay "his or her fair, equitable and legal proportion thereof;" *Held*, 1. That the instrument imposed upon the widow the obligation to pay her fair and equitable proportion of unpaid taxes and assessments to which the premises were subject at the time of her marriage with the decedent; and that in legal contemplation there was no proportion for her to assume.

2. That the taxes assessed and unpaid before the assignment of dower was made, could not be charged upon the estate assigned to her, when there was personal estate sufficient to pay them.

3. That the burdens assumed with the enjoyment of the life estate related to the future, only.

APPEAL by the plaintiffs from a judgment entered upon the report of a referee.

John Harrison died August 6th, 1861, leaving the defendant, his widow, entitled to dower in his real estate, but leaving a will devising all his estate, real and personal, to George Harrison, for whom the plaintiffs sue as committee of his person and estate. Dower was assigned to the defendant by deed between George Harrison and the defendant, dated November 15, 1861, by which certain lands were set apart to her for dower and the balance released by her, and after a recital that the premises of which John Harrison died seised were subject to certain unpaid taxes, assessments and other incumbrances, each party

covenanted to pay "his or her fair, equitable and legal proportion thereof." It is upon this covenant that it is sought to compel the defendant to pay, 1st. A share or proportion of all the taxes upon the real estate of John Harrison, remaining unpaid at the time of his death, the whole of which were paid by him or his committee. 2d. Taxes imposed on the portions of the real estate so set apart to the defendant for dower for the year 1861, and which had been confirmed September 20th, 1861, after John Harrison's death, but before dower assigned. As to these claims, the defendant denied any responsibility, and by way of counter-claim, claimed to recover: 1. For six months' rent of premises so assigned to her, for her dower, collected by George Harrison, to February 1, 1862, $800, in contravention of his covenant. 2. For taxes she was compelled to pay on the lands set apart to her, which had been imposed prior to the assignment of her dower, and which by George Harrison's covenant he was bound to pay. 3. As to seven lots on 25th street, which were subject to a mortgage for $7000, executed by John Harrison to James Bogert, in 1856, two of which were assigned to her for dower, on foreclosure of such mortgage, in 1864; five of the lots, including the two set apart to her, were sold to pay the mortgage, out of the proceeds of which, after satisfying the debt, interest and costs, there was a surplus of $292.87, which she collected; and the referee found that in such proceedings she contributed, in the payment of the liens on the lots, $1129.51 beyond her proportion.

The referee made a special report, by which he found the following facts: The plaintiffs are the committee of John Harrison, as stated in the complaint. John Harrison was married to the defendant, now Martha Peck, on the 26th day of November, 1860. John Harrison died on the 5th day of August, 1861, having first duly made his will, by which he devised to George Harrison all his real

estate, and bequeathed to him all his personal estate, and appointed said George his executor, and he duly qualified as such. At the time of the marriage of said John, and at the time of his death, he was seised, in fee, of the several lots of land in the city of New York, mentioned and specified in the deed of November 15, 1861, hereinafter mentioned. The said lots, including those assigned to the defendant in and by the schedule annexed to said deed, and those released by her, were, at the time of said marriage, and at the death of said John, subject to state, city and county taxes amounting to over six thousand dollars, which had been theretofore laid and assessed on the same. Said taxes were laid and assessed between the years 1856 and 1860, both inclusive. Taxes were laid and assessed on said lots for the year 1861, the assessment for that year having been confirmed on the 20th September, 1861. On the 15th day of November, 1861, an instrument was executed by George Harrison of the one part, and the defendant Martha of the other part, by which certain of said lots were set apart to said Martha, as and for her dower, and by which all her right and claim in and to the residue of said lots was released by her to said George. The mortgage mentioned in the schedule annexed to and forming part of said deed, and therein stated to have been given on the seven lots on 25th street, mentioned in said deed, was foreclosed in consequence of the non-payment of the interest thereon. Said foreclosure was commenced in the year 1863, and a sale on the decree of foreclosure took place on the 24th day of March, 1864, on which sale five of the said lots, including the two lots assigned to the defendant (among others) for her dower, were sold. The default in payment of said interest was made alike by said George and the plaintiffs, his committee, on the one part, and by the defendant on the other. At the time of that sale there were unpaid taxes on the five lots that were sold, to the amount of $1259, the proportion

of which on the defendant's two lots was $507.60, for the years from 1856 to 1861, both inclusive. At the same time there were unpaid taxes assessed after the year 1861, on the two lots assigned to the defendant, to the amount of $130.47, and on the other three of the five lots $195.72. The sale produced a sufficient sum to pay principal and interest of the mortgage, costs and expenses of foreclosure, and all the taxes above mentioned; and said taxes were then paid out of the sum produced by said sale. Surplus moneys over and above all these charges remained, out of which surplus moneys the defendant, on the 24th day of March, 1864, received the sum of $292.87. The costs and expenses of said foreclosure amounted to $272.55; the principal due on said mortgage was $7000, and the interest thereon at the time of said foreclosure, sale was $1104.25, all amounting to $8376.80. The said two lots sold at said sale for $4100. The defendant's life estate in said lots was then worth $2770.05, and her proportion of the said $8376.80 was $1640.54, and she thus contributed beyond her proportion the sum of $1129.51. At the time of the execution and delivery of said deed, a part of the premises assigned to the defendant were under a lease executed by George Harrison to Robert Walker, on which lease the said George had received $400 for the rent of the quarter which fell due on the first day of November, 1861, and $400 for the quarter's rent which fell due on the first of February, 1862. The personal property of said John Harrison, left at his death, and which came into the hands of said George Harrison as his legatee and executor, was sufficient to pay all the taxes above mentioned, but not sufficient to pay said taxes and all the other debts of said John. After the execution of said deed, several thousand dollars of the taxes above mentioned were paid by the said George, or by the plaintiffs, part of which were paid out of the personal estate of said John, and part out of sales, by order of the surrogate, of the real estate of which said

John died seised, other than that part of it assigned by
said deed to the defendant for her dower.   The defendant,
on the 24th day of March, 1864, was thirty-three years of
age; she was married to Everard H. Peck on the 17th day
of April, 1867, (after the commencement of this action.)
The defendant, on the third of April, 1862, paid the sum
of $193.85 for taxes of the years 1858, 1859 and 1860, on
lot No. 316 Canal street, being one of the lots assigned to
her for her dower.   The taxes assessed after 1861, on the
lots assigned to her for dower, have been paid by her, or
out of her property.

As conclusions of law, the referee found,

1. That under the deed of November 15, 1861, the de-
fendant took the premises thereby set apart to her, with
the same legal effect in all respects as if the same prem-
ises had been set apart to her for her dower by the ordin-
ary proceedings for that purpose in a judicial tribunal;
that by that instrument and its covenants neither party
contemplated or intended that the defendant's rights in
those premises, as doweress, were to be in any manner
different from what they would have been if the same
premises had been set apart to her in proceedings for the
admeasurement of her dower, and no such difference, nor
any change in her rights, was wrought by that instrument.

2. That as between the defendant, the widow of John
Harrison, and George Harrison, the devisee, legatee and
executor of said John Harrison, the latter was bound to
pay all the taxes assessed and existing at the time of her
marriage, and at the time of her husband's death, on all
the premises mentioned and specified in said schedule A,
including those set apart to her for dower.   This rule ap-
plies also to the taxes of the year 1861, which were as-
sessed for the year in which said John died, and which
were confirmed September 20th, 1861, nearly two months
before the execution and delivery of the deed of Novem-
ber 15, 1861.

3. The plaintiffs thus being bound to pay all the taxes on the lots assigned to the defendant, assessed prior to and including those for the year 1861, are bound to pay to the defendant all such of those taxes as she has paid, or as have been paid out of her property, and these are,. (1.) Those paid from the avails of the sale of her two lots, on the mortgage, as stated in the eighth paragraph of the finding of facts. (2.) Those which the defendant paid on the lot in Canal street, as stated in the thirteenth paragraph of said finding.

4. The plaintiffs are bound to pay the defendant the sum of $1129.50, being the amount contributed by the defendant's two lots, beyond their proportion of the principal, interest, costs and expenses of the foreclosure of the mortgage, as particularly stated and mentioned in the eighth paragraph of the said finding. The parties being equally in default in payment of the interest, are liable, each, to the proportional share of the costs and expenses, and no more.

5. The plaintiffs are bound to pay the defendant the sum of $1177.35, being the principal, (and interest thereon,) of the sums received by George Harrison of Robert Walker for rent of part of the premises assigned to the defendant for dower, as stated in the ninth paragraph of said finding.

6. The defendant is entitled to judgment for the aggregate of the foregoing sums, with interest thereon from March 24, 1864, amounting to $3100.90, after deducting therefrom the sum received by the defendant from said surplus moneys, as stated in the eighth paragraph of the finding of facts.

7. Understanding from the parties that if there were any assessments on the premises assigned to the defendant, they would settle and arrange these between themseves, the referee only found, as to these, that if they benefited the life estate of the defendant, as well as the inheritance,

she was bound to contribute toward them in the proportion of the value of her life estate in the lot or lots assessed, to the value of the remainder or reversion, in fee, therein.

8. The defendant is bound to pay all taxes assessed on the lots assigned to her after the execution and delivery of the deed.

9. The defendant is entitled to the costs of the defense of this action. (*a*)

The plaintiffs excepted to the referee's conclusions of law, and to his general report, wherein he found that

(*a*) The following is the opinion of the referee:

C. P. KIRKLAND, referee. The only question really in litigation between the parties, in this action, is whether the defendant is bound to contribute towards the payment of the taxes which existed at the time of her marriage and at the time of her husband's death, on the premises of which she was seised during the coverture. In other words, whether a doweress, as between her and the devisee, legatee and executor of her husband, (the same person being devisee, legatee and executor,) is bound to pay or contribute towards the payment of any taxes existing at the time of the marriage and of the death of the husband, on the premises assigned to her for dower, or on any of the premises of which the husband was seised during the coverture.

It is a singular and interesting fact, that though this question, it would seem, must have very frequently arisen, yet no adjudged case, deciding the precise point, has been cited by the learned counsel who conducted the same before me, nor is the rule governing the case stated by any elementary writer, as far as their examinations have discovered; nor have my researches been any more successful. This fact gives additional interest to the question, and leaves it to be decided purely *on principle.*

I. Estates in dower have always been regarded with great favor in *the law,* and the widow's rights have been watched over and protected with jealous care. The tenant in dower is so much favored that it is the common by-word in the law, that the law favors three things: 1. Life. 2. Liberty. 3. Dower. (*Bacon on Uses, p.* 37.) From the earliest period of the existence of the common law, a very extraordinary favor was bestowed, in the administration of justice, on this provision for a wife surviving her husband. Dower is, indeed, proverbially the foster-child of the law, and so highly was it rated in the category of social rights as to be placed in the same seat of importance as life and liberty. (*Park on Dower,* 2, 3, 5.) "*Favorabilia in lege sunt vita fiscus, dos libertas,*" was the maxim of the courts. Dower is often the only resource of widowhood. It has for its object the sustenance of the widow and the nurture and education of her children.

Harrison *v.* Peck.

there was nothing due from the defendant to the plaintiffs; that there was due from the plaintiffs to the defendant the sum of $3100.90; and that the defendant was entitled to judgment for that sum, with costs.

*Edward W. Cone*, for the appellants.

*Robinson & Scribner*, for the respondent.

I. As to the taxes upon the real estate of John Harrison, at the time of his death, they were primarily chargeable upon his personal estate, being preferred by statute over

This doctrine has continued from, and anterior to, the time of Bacon, down to this day, and the most modern cases repeat the proposition that the widow's estate in dower is favored in law. So carefully, indeed, is this right protected, that a deed given *before marriage*, by a husband to his daughter, without consideration, was adjudged *void* against the widow's claim *for dower*, as well as against a subsequent mortgagee. And can we wonder that this estate is so cherished, and so kindly, we may say so affectionately, cared for, when we reflect that every man has or has had a *mother*, and that mother is or may be a *widow*. (*Matter of Sapperly*, 44 *Barb.* 370. 13 *id.* 106. 4 *id.* 120.) We thus see the estimation in which this right has always been, and still is, held by the law; and we are thus furnished with a very clear as well as a very certain light to guide us to a proper conclusion on this occasion.

II. On general legal principles the doweress should have preference to the devisee. (1.) *As between him and her*, she may well be regarded in a legal sense as a purchaser for valuable consideration, whereas he is purely and merely a *volunteer*, the bare recipient *of a gift*. The law in such case is uniform; it will always protect the former as against the latter, whenever such protection is possible. The wife is the helpmate of the husband; she stands towards him in the most intimate and confidential of all human relations; she shares with him his joys and his griefs; she enables him to occupy the sacred relation of a parent. Without her he would be without a real home. In the performance of her share of duty she aids him in the acquisition of his property. She is in every sense, practical and legal, a *meritorious* (as distinguished from a voluntary) party in regard to her estate in dower. It would be repugnant to every sentiment of justice and of right, that a party thus situated should not, in every possible way, have preference to a party who is a mere volunteer, a gratuitous donee, without the slightest *meritorious* claim, and such a party is this devisee. (2.) The tax was laid and assessed on the vested, *existing*, visible estate of the husband, not on the inchoate, intangible, merely possible, estate of the wife.

III. On examining carefully the various provisions of the statute law of this

Harrison *v.* Peck.

all debts, except those due the United States, and suffi-
cient personal assets to pay the same came into the hands
of George Harrison, as executor. (2 *R. S.* 87, § 27, *sub.* 3.)
They were debts the husband left ünpaid, and the widow
had a right to claim the application of his personal estate
to their payment, and in the exoneration of her interest
in the land. (*Holmes* v. *Holmes,* 3 *Paige,* 363. *Mollan* v.
*Griffith, Id.* 404. *Warner* v. *Van Alstyne, Id.* 514. *Sea-
bury* v. *Bowen,* 3 *Bradford,* 207. 2 *Jarm. on Wills,* 554.
2 *Wms. on Ex'rs,* 1442. *Serle* v. *St. Eloy,* 2 *P. Wms.* 386.)

state, we find enough to justify us, nay to compel us, irrespective of the fore-
going considerations, to carry into practical effect the doctrine that dower is
an estate " favored in the law." (1.) The Revised Statutes provide that execu-
tors and administrators shall pay the debts of the deceased in the following
order : (1.) Debts due the United States. (2.) Taxes assessed on the estate
of the deceased prior to his death. (3.) Judgments, &c. The duty and the
burden of paying taxes are thus plainly imposed on the representatives of the
*personal* property; as between the real and personal estate, the latter is charged
with this burden, to the exoneration of the former. It is very clear, that in no
event could the party entitled to the personal estate call even on an heir or
devisee for repayment or indemnity, not even if the personal estate were large
and valuable, and was entirely exhausted in payment of taxes, the real estate
being also very valuable and entirely free from incumbrance. If in such case
neither heir or devisee could be required by the party entitled to the personal
property, to pay or even to contribute towards payment of the taxes, by par-
ity of reason, indeed for much stronger reason, a doweress could not be so
required. The payment thus made would result to the benefit of the heir by
the extinguishment of the incumbrance on his estate; by what reasoning can it
be shown that it should not also, and equally, result to the benefit of the dow-
eress? More emphatically must this be so where, as in the present case, the
personal estate was sufficient to pay the taxes. It was thus the duty of the
executor to pay the taxes; he can make no claim for them or any part of them,
against the doweress. The case here is rendered still stronger, if any necessity
existed for further reasoning, by the fact that the devisee, the legatee, the ex-
ecutor, are one and the same person. (2.) Personal property is, without doubt,
the *primary* fund for the payment of taxes. This is manifest from the pro-
visions of the act just cited, and equally, if not more clear from the provisions
of another act, which makes it the duty of the supervisors to issue a warrant
to the collector for the collection of the tax, and in case of non-payment, makes
it the duty of the collector to levy the same by distress and sale of the *goods
and chattels* of the party taxed, or of any goods and chattels *in his possession.*

The law as announced in *Cumberland* v. *Codrington*, (3 *John. Ch.* 257,) that the personalty is the primary fund for the payment of debts charged upon the land, was only altered by the Revised Statutes (1 *R. S.* 749, § 4) so as to charge debts secured by mortgage upon *the heir or devisee,* but in no way interferes with the previous rule, so far as it operated to the benefit of the doweress. (*Revisors' Notes,* 3 *R. S.* 600, 2*d. ed.*) 1. As between her and her husband's executor, who was the legatee and devisee of his entire estate, she was entitled to application of the personal prop-

If the collector fails to collect, he is bound make to return to the county treasurer, and he subsequently returns to the comptroller, who then takes the requisite steps to collect, &c. (1 *R. S. p.* 367, § 37; *p.* 369, § 2; *p.* 374, *Edm. ed.*) In this very case, if the officers charged with the collection of the taxes, had done their duty, it cannot be doubted that the taxes in question prior to 1861, would have been collected from or paid by the husband in his lifetime. At any rate, it is certain that during the husband's life, his goods and chattels, and after his death his personal property, is the *primary fund* for the payment of taxes. The debt was the debt of the husband, to be paid by him, and not the debt of the wife, to be paid by her; and if the officers of the law neglected to collect, and the husband neglected to pay, the consequences of these defaults in duty on the part of the officers and of the husband, surely ought not to be visited on the wife when she becomes a *widow.* (3.) The act for the admeasurement of dower strongly confirms the doctrine that the doweress is not to be charged with the taxes assessed prior to or during the coverture. The 13th section provides that the admeasurers shall take into consideration certain improvements made on the premises, and it provides for no other *deductions* from the value of the premises to be assigned for dower. It not only does not charge the taxes on the doweress, but by implication exonerates her from them. (2 *R. S. p.* 291, §§ 13, 17, 18, 1*st ed.*)

The 18th section provides that the widow may bring ejectment for the premises admeasured to her, and may hold the same during life, subject to the payment of all the *taxes* and charges accruing thereon subsequent to her taking possession. By the general rule in the construction of statutes, (as well as of contracts,) "*expressio unius est alterius exclusio*," and therefore by providing expressly that she should be liable for *subsequent* taxes, the just, if not the necessary inference is, that she is not to be liable for such as preëxisted her taking possession. It is difficult to imagine a case to which the rule of *expressio unius,* &c., could be more justly and more properly applied than the case now under consideration.

I am thus irresistibly led to the conclusion that the defendant is not, as be-

Harrison *v.* Peck.

erty to the discharge of these debts. 2. The land devised to George Harrison, including the reversion of those set apart for dower, were primarily chargeable with the taxes assessed before assignment for dower, and the covenant of George Harrison bound him to pay them.

II. So also with regard to taxes assessed or imposed upon the real estate after the death of John Harrison, (Sept. 20,

tween her and George Harrison and his representatives, the plaintiffs, liable or bound to pay any part of the taxes existing at the time of her marriage, or at the time of the death of John Harrison,.and of course, if any such taxes have been paid by her, or out of her property, that she has the right to claim and recover them from the plaintiffs.

IV. It must be remembered that the question here is between the doweress and the devisee of her husband, not between her and *creditors* having a lien on her husband's real estate, existing at the time of the marriage. The latter have preference to her, and her dower is subject to all such liens. This proposition is too clear and too reasonable to require the citation of authorities on the subject. Of course her dower rights are subject to all existing *taxes whenever* imposed; the practical meaning of which is, that the government (state or municipal) has the right to collect the taxes out of the estate, irrespective of dower. If the taxes are collected in whole or in part out of the interest or estate of the doweress, set apart to her after her husband's death, she has her resort to the heir, devisee or executor, as the case may be, for reimbursement.

V. Influenced, doubtless, by the laudable desire to save the delay and the not inconsiderable expense of legal proceedings for the admeasurement of dower, the parties executed the deed of November 15, 1861. (*a.*) It cannot be believed that either party, or the counsel of either party, contemplated or intended, that by that instrument, or any of the provisions contained in it, either the doweress on the one side, or the devisee on the other, should hold the premises therein mentioned in any other manner, or subject to any different or other burdens or liabilities, than such as would have existed if the premises thereby set apart to the defendant had been set apart to her in due course of legal proceedings. In conformity with this view must the covenants in that instrument be construed. In the last paragraph of that instrument it is recited, that at the time of the defendant's marriage, the premises mentioned in it were subject to certain unpaid taxes and assessments, and it is mutually agreed that each party shall pay his or her "fair, equitable and legal," proportion thereof. I do not regard these words "fair and equitable" so far as the defendant is concerned, as in any manner qualifying or affecting the word "legal," for surely there is nothing in this case to show that it would be fair or equitable for her to pay anything which the *law* did not require her to pay ; and if the law did not devolve on her the duty of paying the taxes, but, on the contrary, cast that

1861,) but before dower was assigned to her, (Nov. 15, 1861,) they were solely chargeable upon the devisee. (2 *R. S.* 302, § 2, *sub.* 2.  *Id.* 488, § 1.  1 *id.* 742, § 20.)  1. By statute, the tenant in dower is only chargeable with "the taxes and charges accruing thereon subsequent to her taking possession," (1 *R. L.* 61, § 8; 2 *R. S.* 491, § 18;) and so also by common law, (*Branson* v. *Yancy,* 1 *Dev.*

burden on the devisee, it certainly cannot be reasonably argued that it would be fair and equitable that she should pay them. It is not alleged or shown that the taxes on the defendant's premises, or on those she released, had any influence in determining what premises should be released to her, nor that these same premises would not have been admeasured to her in the due course of legal proceedings. From nothing that appears in this case can it be urged that the defendant is bound, in equity or fairness, to pay any other or further sums than such as the law devolves on her. Again, the words used are taxes and *assessments,* and there may have been assessments of such a kind that the defendant would be legally bound to pay a portion of them, though not bound to pay any of the *taxes ;* and thus this phraseology could have effect without applying it to taxes. I am not aware that the plaintiffs rely in any degree on the words of that instrument as affecting or altering the rule of law, if that rule be, as I hold it to be, that a doweress is not bound to pay the taxes, or any part of them, existing at the time of the marriage, or imposed during coverture, on the premises admeasured to her for dower. I think it would be an equal surprise to both parties to be now informed that the plaintiffs had gained, or that the defendant had lost, anything by their executing the instrument Schedule A, instead of proceeding in the legal mode to have the defendant's dower set apart to her. I do not consider the covenant of George Harrison against incumbrances, &c., contained in Schedule A, as in any respect increasing his legal liabilities to the defendant, for, as I hold the law to be, he would have been equally bound without that covenant, as with it, to pay the taxes now in question.

VI. The liability of the plaintiffs to the defendant for the rent received by George Harrison, of Robert Walker, and for the excess contributed by the defendant's two lots over and above their proportion of the principal and interest of the mortgage, and costs and expenses of sale, cannot be questioned; and the plaintiffs do not question it, as I understand.

VII. Under the circumstances in this case, it would be very satisfactory to me to report that neither party is entitled to costs against the other, but I feel bound, under the provisions of the Code, section 304, subdivision 4, to give costs to the defendant. This action is, in substance, merely an action "for the recovery of money."

Harrison *v.* Peck.

*Eq.* 77.) 2. The defendant had no estate or right of entry, and but a contingent interest in the land, resting in right of action, until dower assigned. (*Moore* v. *The Mayor &c. of New York,* 8 *N. Y. Rep.* 110. *Corey* v. *The People,* 45 *Barb.* 262.) Although by the covenant of George Harrison, made November 15, 1861, she became entitled to the quarterly rents accruing from and after August 1st, 1861, (to wit, on November 1st, and quarterly thereafter,) this does not *by relation* create any estate in her from and after that date, nor immediately from and after August 6th, when her husband died. The covenant, at most, accorded to her by way of assignment, the right to collect the rents for the quarter ending November 1st, 1861, but gave her no estate in the land, nor any remedy against the tenants in possession, or others who during that quarter had injured or trespassed on the freehold. George Harrison alone had any right of action for such acts. So, too, if the lands assigned for dower were leased at an annual rent, payable upon the last day of the term, so that the tenant in dower could take the whole rent. Yet she would not legally or equitably be liable for any taxes previously imposed during the current year. The doctrine of relation only applies "when two things are considered so as if they were all one, and by this the thing subsequent is said to take its effect by *relation* to the thing preceding." (*Cunningham's Law Dic.,* "*Relation.*") 3. Nor were these taxes of 1861 apportionable, upon any principal of equity, so as to charge her subsequently accruing estate in dower with any portion of them. Taxes are not apportionable between successive estates, but are chargeable to the particular estate in *esse* when they are assessed. (*Sutton* v. *Chaplin,* 10 *Ves.* 66. *Branson* v. *Yancy,* 1 *Dev. Eq.* 77.)

III. The referee has recognized these principles as to the plaintiff's claim, and has accordingly found in favor of the defendant, for the taxes assessed in and prior to 1861, on the two lots on 25th street set apart for her dower,

($507.60,) deducted from the proceeds of her two lots; the amount ($1129.51) she contributed out of such proceeds beyond her proportion, less $292.87 she received out of the surplus; the taxes of 1858, '59 and '60, which she had paid on No. 316 Canal street, set apart to her, and the rents George Harrison had collected from Robert Walker, which, by the assignment of dower and the covenant of the deed admeasuring dower, belonged to her, together with interest on these several items from the several times when her right to repayment accrued.

*By the Court,* BRADY, J. It is not necessary to add to the opinion of the referee in this case, which embraces and properly disposes of the questions involved herein; but a few suggestions may not be objectionable. It is said that dower is highly favored in equity; and it was said by the master of the rolls, (Sir Thomas Trevor,) on one occasion, " the right that a doweress has to her dower is not only a legal right, and so adjudged in the law, but it is also a moral right, to be provided for and have a maintenance and sustenance out of her husband's estate, to live upon. She is therefore in the care of the law, and a favorite of the law; and upon this moral law is the law of England founded as to the right of dower. (*Denton* v. *Nanny,* 8 *Barb.* 620. 1 *Story's Eq.* § 629, *and note* 1.) By reference to the Revised Statutes of this State we find the dower right thus declared: " A widow shall be endowed of the third part of all the lands whereof her husband was seised of an estate of inheritance at any time during the marriage." There is no qualification or condition in this section, and the sections of the statute relating to it and the admeasurement of dower indicate a clear intention of the legislature that, as between the widow and the heir or devisee, this provision shall be enforced unburthened, (1 *R. S.* 770, §§ 1, 4; 2 *id.* 491, § 18,) if that may be, except from the time an assignment of the dower has been

Harrison *v.* Peck.

made.    The direction to the executor to proceed with dili-
gence to pay the debts of the deceased, and in the order
expressed, contained in the Revised Statutes (2 *R. S.* 87,
§ 27) is in legal effect an appropriation of the personal
estate for that purpose, and it must be employed therefor.
(*Seabury* v. *Bowen,* 3 *Brad.* 207.)    And this result having
been attained, the legatee has no right against the widow's
dower, founded upon such appropriation.    It must be
assumed, in the absence of an express provision to the
contrary, that the assignment of dower was predicated of
this provision of the law which was in view of the con-
tracting parties.    The instrument of the 15th of Novem-
ber, 1861, contains no such provision.    It imposes upon
the widow the obligation to pay her fair and equitable
proportion of unpaid taxes and assessments to which the
premises described therein were subject at the time of her
marriage with John Harrison, the decedent, and in legal
contemplation there is no proportion for her to assume.
The conclusion of the referee, therefore, that the taxes
assessed and unpaid before the assignment of dower was
made, cannot be charged upon the estate assigned, where
there is personal estate sufficient to pay them, is correct.
The burdens assumed with the enjoyment of the life estate
relate to the future only.

The judgment should be affirmed.

[NEW YORK GENERAL TERM, April 4, 1870.   *Ingraham, Geo. G. Barnard* and
*Brady,* Justices.]