NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
April, 1877.

## TAYLOR v. BENTLEY.

*In the matter of the petition of* LAURA S. TAYLOR, *widow of* JAMES B. TAYLOR, *deceased.*

When surplus moneys on foreclosure are paid into the Surrogate's Court, and the widow applies for an appointment of her dower right therein, sums due from her to the estate can not be affected or recouped or allowed by way of equitable counterclaim against her right to her dower therein.

*It seems* that if the widow should elect to take a sum in gross, in lieu of her dower, such a counterclaim could be allowed against it by the surrogate.

Under 1 *R. S.*, 741, § 6 , providing for the dower of a widow in surplus moneys on foreclosure, the amount in which the widow is dowable is to be ascertained, after deducting the cost and expenses of the foreclosure proceedings, as well as the amount due on the mortgage.

Taxes and assessments on the real estate however are not to be deducted in computing the amount in which she is dowable.

THIS was a petition by the widow, Laura S. Taylor, for her dower right in certain surplus moneys, realized on the foreclosure of a mortgage upon the dwelling house of the decedent, situate on Madison avenue in this city.

The petition set forth that the deceased died seized of premises No. 303 Madison avenue, which were encumbered by a mortgage for $20,000, which was afterward foreclosed, and the premises sold, and the surplus moneys pursuant to an order November 28th, 1876, paid to the surrogate of this county, amounting to $12,347.18; that the petitioner is 62 years of age; and that in July, 1876, a receiver of the real estate, and the rents, issues, and profits of the decedent, was appointed.

In answer to the petition the receiver filed an affidavit stating that nothing was due the petitioner for dower in respect to said premises; that decedent died August 22nd, 1870, and from that time till the sale of the premises in November 1876, the petitioner occupied the entire of said premises, and paid no rent; that after deducting the time to which she was entitled to such occupancy free of rent, she has occupied them over six years; that the fair rental value thereof was $45,000 and upwards, and that there is an offset to her claim of dower of more than $20,000; that her age is upwards of 70 years, and that to ascertain the value of her dower her actual age must be ascertained; that November 4, 1871, letters testamentary were issued to the petitioner who acted as executrix till 1875, and while doing so she converted and appropriated to her own use a large portion of the personal property; that in the fall of 1875, said receiver was appointed by the Supreme Court in an action in which the petitioner was enjoined from acting in the administration of the estate, and was superseded by said receiver; that the amount converted to her own use exceeds $50,000, and that she is irresponsible and insolvent.

Kate B. Howland, a legatee, and only heir-at-law opposed the petition on substantially the same facts.

The petitioner by affidavit thereupon alleged that her husband died leaving a will, naming her as one of the executors, and sole residuary legatee; that the will was contested by Kate B. Howland, but finally admitted to probate, and the contestants appealed, and the Court of Appeals reversed the surrogate's order,

and ordered the validity of the will to be tried by a jury, which trial has not been had; that pending said appeal, the contestant procured a writ of prohibition, prohibiting the executors from exercising their trust; that at the death of her husband, and for six years thereafter, she believed the estate to be solvent, and still believes so; that she being entitled to the whole estate after payment of debts and legacies, and being the sole residuary devisee of said house on Madison avenue, she occupied the same as such widow, it being the principal residence of the decedent before his death, and the only available place where she could reside; that on the trial she believes the validity of the will will be established; that by the prohibition aforesaid the executors could not rent said house, if so inclined; that the same contained very valuable furniture, paintings &c., which required care to preserve; that she has expended in repairs large sums of money individually, and that the receiver when appointed took possession of said house. She also denied that she occupied the house six years; that the rental value was $45,000; or that she is indebted to the estate; that she is seventy years of age; and that she converted to her own use a large portion of the personal property. She further set forth that in 1871 the surrogate ordered that she be paid $15,000 per year out of the estate, no portion of which has been paid except a small amount; that she has large personal claims against the estate for commissions, no part of which has been paid; that the estate is indebted to her in an amount exceeding $150,000; that the balance after payment of debts,

will belong to her; and that if the facts set forth in her opponent's affidavit are true, she is advised they constitute no defence to the claim made in her petition.

A supplemental affidavit in rejoinder stated that it was after the decision of the Court of Appeals reversing the probate, that the writ of prohibition was obtained; that the furniture in the house of said testator was appraised by the surrogate at $40,000, and that the petitioner has appropriated the same to her own use, from the death of her husband until 1876; that in her sworn answer to the writ of prohibition she stated that at the time, 1874, the same was worth $15,000, and she continued to occupy the same till 1876, when the receiver sold it for less than $10,000; that the petitioner as executrix collected several thousand dollars of money belonging to the estate, and appropriated the same to her use, and has not paid it over; that the house in question could have rented for a very large sum; and denied that she has paid any considerable sum for repairs, or that she has any claim against the estate, and alleged a belief that more than $15,000 mentioned in the order of said surrogate, has been paid to her, and that deponent believes the will alleged to be a forgery.

The counsel for the respective parties submitted the proceedings on the question whether, if the facts set forth by way of answer to the petitioner be true, they constitute any defence to the application.

J. M. LEVY, *for the petitioner.*

C. E. SOULE, *for Kate B. Howland.*

H. L. CLINTON *and* W. B. PUTNEY, *for the receiver.*

THE SURROGATE.— The counsel for the petitioner

urges that these proceedings are in the nature of an admeasurement of dower, and that as to the petitioner's *right* of dower this court has no jurisdiction, citing the cases Parks *v.* Hardey, (4 *Bradf.* 15); Jackson *v.* Waltermier, (5 *Cow.*, 299); Badgley *v.* Bruce, (4 *Paige*, 98); Wood *v.* Seely, (32 *N. Y.*, 105); Matthews *v.* Duryee, (45 *Barb.*, 69); and Blydenburgh *v.* Northrop (13 *How. Pr.*, 289).

These authorities are based upon the statute upon the subject of admeasurement of dower.

By the terms of section 17, 2 *Rev. Stat.*, 491, it is provided that such admeasurement, made and confirmed, shall at the expiration of thirty days from the confirmation, unless appealed from, be binding and conclusive as to the location and extent of the said widow's right of dower, on the parties applying and those notified, but that no person shall thereby be precluded from controverting the *right* and title of such widow to the dower so admeasured. This case presents no denial of the *right* of the widow to dower, and the adjudication of this court is not invoked upon this question. But under the peculiar circumstances of this case, I am asked to determine that the claim of the estate against the widow for the use and occupation of two-thirds of the premises in question, constitutes a counter-claim in equity against her claim for dower, upon the principle that she is bound in this proceeding to do equity, and the case of McLoughlin *v.* McLoughlin (20 *New Jersey Eq.*, 190,) is cited as authority for this principle. There the widow occupied the mansion house for several years after the death of her husband; she was also administratrix of

the estate. She filed her petition electing to accept a gross sum in lieu of her dower, and obtained an order to a master to ascertain the value of her dower, and the court held that where she came into court to claim the value of her dower, she would be required to do equity, and the executors would be allowed to recover the value of one-third of the whole estate, deducting the value of the part occupied by her, and they allowed her to occupy the mansion free of rent, and gave her out of the residue of the estate so much as made her part, one-third of the value of the whole, there being other parcels of real estate in which she was entitled to dower.

This seems to be equitable. But the widow's dower cannot be sold on execution until it shall be assigned, and the counsel for the petitioner claims that no claim for rent against the widow for the use of the rest of the house, however equitable, can be counterclaimed against her dower, which had not matured into liens upon the premises in question, and cannot be taken into consideration in proceedings of this kind, which are likened to a reference under the statute to ascertain the claims to surplus moneys, and cites King v. West (10 *How. Pr.*, 333,) and Husted v. Dakin (17 *Abb. Pr.*, 137). By 1 *Rev. Stat.*, 742, section 17, it is provided that the widow may tarry in the dwelling-house of her husband forty days after his death, whether her dower is sooner assigned to her or not, without being liable to any rent for the same, which statute doubtless implies the liability on her part for such occupancy after the expiration of forty days, but the claim for such rent constitutes no lien upon the premises in

question, and no legal counter claim to her right of dower.

This is a proceeding under the statute and strictly statutory, and does not invest this court with equitable powers in respect to any claim which may exist in behalf of the estate against the widow's dower, and under the statute above cited it seems to me that I am required only to ascertain the amount of the surplus out of which the dower is to be assigned, and that any equitable defence to its enjoyment by the petitioner must be the subject of enquiry in another court.

In Mathews *v.* Duryee (45 *Barb.*, 69,) it is well said that surplus money arising on a sale of land, under a mortgage foreclosure, stands in the place of the land, and the widow of the owner of the equity of redemption is entitled to dower of the surplus, as she was of the land before the sale, and I think it cannot be reasonably pretended that if there had been no incumbrance on the premises in question, and the widow had occupied up to the present time, and then brought proceedings for admeasurement of her dower, that her occupancy would have presented any obstacle to an admeasurement.   But it is also urged by the petitioner's counsel that the widow is entitled to be endowed in the surplus, over and above the principal and interest of the mortgage, without being charged with costs, taxes or assessments, and some authorities are cited to the effect that her interest in the premises cannot be charged with the costs of foreclosure; but by section 6 of 1 *Rev. Stat.*, 741, it is provided that if a surplus shall remain after payment of the moneys due on the mortgage and the costs and charges of the sale, the

widow shall be entitled to the interest or income of one-third part of such surplus for her life as dower, which would seem to dispose of the question of costs, and the revisors in their notes on page 335 of 5 *Rev. Stat. at Large* state that " this is now the rule in chancery when a sale is made under a decree, but not when the sale is made under a power of sale, though it is apparent that the equity is the same." It was doubtless to give effect to this obvious equity that the section in question was enacted. (See Denton *v.* Nanny, 8 *Barb.*, 618 ; Brackett *v.* Baum, 50 *N. Y.*, 8). And this statute, it seems to me, changes the rule, as laid down in Tabele *v.* Tabele (1 *Johns. Ch.*, 44).

But I am of the opinion that the widow is not chargeable with taxes or assessments. (See Williams *v.* Cox, 3 *Edw. Ch.*, 178.) In Harrison *v.* Peck (56 *Barb.*, 251,) it is held that the statute relating to the admeasurement of dower indicates a clear intention of the legislature that as between the widow and the heir or devisee, the widow's right of dower shall be enforced, unburthened if possible, except from the time an assignment of dower shall have been made, and that the taxes and assessments unpaid before the assignment of dower could not be charged upon the estate assigned to her, when there was personal estate sufficient to pay them.

By section 37 of 3 *Rev. Stat.* 95, Banks' 6th edition, taxes assessed upon the estate of the deceased, previous to his death, are preferred even to judgments and decrees. I am therefore of the opinion that it is my duty to ascertain the amount of the surplus over and above the principal and interest of

the mortgage, and the costs and expenses of fore-closure, and to assign to the petitioner one-third of that surplus, to be invested for her benefit during her life, and as there seems to be a discrepancy between the amount as alleged by the respective parties, a reference must be made for the purpose of ascertaining the true surplus.   The petitioner, in the prayer of the petition, asks the payment of such dower to the petitioner.   It seems to be based upon some erroneous notion of what dower is, as the petitioner has not elected to take the value of her dower in the surplus, as I understand the terms of the petition.   If she should, then I entertain no doubt of my right and duty to recognize and provide for the equitable counter-claim set forth in behalf of the receiver and next of kin, growing out of the use of the premises, as hereto-fore stated, especially as the petitioner is alleged to be insolvent, and I think, under the principle adjudged in McLoughlin v. McLoughlin (above cited), that when the widow seeks to recover a gross sum, equal to the value of her dower interest, it would be inequitable to award it to her in full, disregarding the equitable claim for use of the premises, which otherwise would be wholly lost to the estate, by reason of her insolvency. If, however, the petitioner elects to consider her pe-tition for the payment of the value of the dower interest, then the reference should embrace also an enquiry into the value of the petitioner's use of the premises, and of her dower right in other real estate of the deceased.

Order accordingly.